UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MILAGROS PENA                          :
                                       :
            v.                         :        C.A. No. 05-224ML
                                       :
JO ANNE B. BARNHART,                   :
Commissioner, Social Security          :
Administration                         :

## REPORT AND RECOMMENDATION

This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Supplemental Security Income

benefits ("SSI") under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed her

Complaint on May 23, 2005 seeking to reverse the decision of the Commissioner.  Plaintiff filed a

Motion for Summary Judgment, or Alternatively, for Remand on September 27, 2005.  The

Commissioner filed a Motion to Affirm her decision on October 20, 2005.  Plaintiff filed a reply

brief on November 4, 2005.  This matter has been referred to me for preliminary review, findings

and recommended disposition.  28 U.S.C. § 636(b)(1)(B).  Based upon my review of the record, the

legal memoranda filed by the parties and my independent legal research, I find that there is

substantial evidence in this record to support the Commissioner's decision and findings that the

Plaintiff is not disabled within the meaning of the Act.  Consequently, I recommend that the

Commissioner's Motion to Affirm (Document No. 8) be GRANTED and that Plaintiff's Motion for

Summary Judgment (Document No. 7) be DENIED.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for SSI on January 27, 2003, alleging disability as of January 22, 2003. (Tr. 88-91).[1]  The application was denied initially (Tr. 54, 56-58) and on reconsideration. (Tr. 55, 60-62).  Plaintiff requested an administrative hearing on August 22, 2003.  (Tr. 63).  On September 10, 2004, Administrative Law Judge Martha H. Bower ("ALJ") held a hearing at which Plaintiff, represented by counsel,  and a vocational expert ("VE") testified.  (Tr. 31-53).  The ALJ issued a decision on December 22, 2004, finding that Plaintiff was not disabled.  (Tr. 13-25).  On March 23, 2005, the Appeals Council denied Plaintiff's request for review.  (Tr. 3-5, 6-9).  A timely appeal was then filed with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that the Commissioner's decision should be reversed because the ALJ attempted to arrive at her own assessment of Plaintiff's capacity without a basis in expert medical testimony.  Plaintiff also argues that the ALJ failed to provide a legally adequate analysis for her conclusions.  The Commissioner argues for affirmance because substantial evidence supports the ALJ's finding that Plaintiff failed to show that she was disabled.

## III.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health

---

[1]  Plaintiff previously filed an application for SSI, which was denied at the initial level of determination on November 16, 1998. (Tr. 100, 139-147).

and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*per curiam*); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law, or if the decision fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (*per curiam*); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey v. Barnhart, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d

-3-

688, 690 (5ᵗʰ Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-10 (1ˢᵗ Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11ᵗʰ Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman v. Barnhart, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material – relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-92 (11ᵗʰ Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified

-4-

findings of fact. Jackson, 99 F.3d at 1095. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV.  DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.  Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.**     **Developing the Record**

The ALJ has a duty to fully and fairly develop the record.     Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

-6-

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty v. Sullivan, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.      Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.      The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey v. Barnhart, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982); 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.     Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey v. Barnhart, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities

available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey v. Barnhart, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen v. Chater, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty v. Sullivan, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment." Nguyen v. Chater, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.

42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1)     The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2)     Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3)     Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4)     Treatment, other than medication, for relief of pain;

(5)     Functional restrictions; and

(6)     The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.     Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg v. Apfel, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia v. Sec'y of Human Servs., 829 F.2d at 195.  The failure to articulate the reasons for

-10-

discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.  APPLICATION AND ANALYSIS

### A.  Background

Plaintiff was fifty-eight years old at the time of the ALJ's decision.  (Tr. 88).  She has a second-grade education (Tr. 112), is unable to communicate in English (Tr. 105), and has past relevant work experience as a child care provider and eyeglass polisher.  (Tr. 107, 115-122). Plaintiff came to the United States from the Dominican Republic in 1988.  (Tr. 273).  From 1988 to 1991, Plaintiff worked full-time as an eyeglass polisher until she was laid off and not recalled.  (Tr. 37, 115-116).  Plaintiff reported no work from 1992 to 1998 (Tr. 107), and full-time child care work from 1999 through the date of the ALJ hearing.  (Tr. 98-99, 107).  Plaintiff alleges disability due to a heart condition, high cholesterol, high blood pressure, and arthritis pain.  (Tr. 106, 129).  Plaintiff also asserts that, "[a]s the evidence accumulated in the record, it began to be shown that she had difficulty with psychiatric problems." Pl.'s Mem. at p. 2.

On November 30, 2002, Plaintiff was seen at the Rhode Island Hospital Emergency Room after complaining of heart palpitations and a rapid heart rate.  (Tr. 148-157).  Upon exam, Plaintiff

-11-

was alert and oriented, and she had normal lungs; normal breath sounds; a regular and rhythmic heart; a normal back; normal extremities; a normal mood and affect; and no neurological, motor or sensory deficits. (Tr. 149, 150, 155). Plaintiff was diagnosed with heart palpitations and discharged in an improved and stable condition. (Tr. 155).

On January 8, 2003, Plaintiff was seen at the Providence Community Health Center for a review of her blood pressure and cholesterol. (Tr. 205). Plaintiff reported that she felt "ok" and had no complaints, and, upon exam, she had no heart palpitations. (Tr. 205).

On March 11, 2003, Dr. John S. Vitelli examined Plaintiff. (Tr. 158-161). Plaintiff complained of heart palpitations, low back and right knee pain, intermittent dizziness, difficulty sleeping at times, and occasional swelling in her left hand. (Tr. 158). Upon exam, Plaintiff was alert, oriented, and in no significant distress, and she had no problems getting on and off the exam table; a normal gait; a supple neck with full range of motion; clear lungs; a regular heart; a normal abdomen; normal upper extremities; no evidence of swelling in her left hand; full grip strength; normal dexterity; some tenderness in her lower lumbar spine at level L4-5; decreased range of motion in her back; stable hips; tenderness and a limited range of motion in her right knee; a normal left knee; normal ankles and feet; no neurological or sensory deficits; and a normal electrocardiogram (EKG) test. (Tr. 158-160). Dr. Vitelli opined that Plaintiff should have no problems with sitting, and that she could have some minor problems with standing, walking, lifting, carrying, or handling objects. (Tr. 159). He also noted no problems with hearing or speaking. Id.

On March 24, 2003, Dr. Thomas Bennett, a nonexamining Disability Determination Services (DDS) physician, opined that Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; stand, walk, and/or sit for six hours in an eight-hour workday; push/pull

without limitations; frequently climb, balance, stoop, kneel, and crouch; and occasionally crawl. (Tr. 165-166).

On June 16, 2003, Plaintiff was seen at the Providence Community Health Center for a review of her blood pressure and cholesterol. (Tr. 210, 249). Plaintiff reported that she felt okay, and, upon exam, she had edema in her left leg and no heart palpitations. (Tr. 210, 249). Plaintiff was diagnosed with high blood pressure, which was noted as well controlled. (Tr. 211, 250).

On July 3, 2003, Dr. Joseph F. Callaghan, a nonexamining DDS physician, opined that Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; stand, walk and/or sit for six hours in an eight-hour workday; push/pull without limitations with her upper extremities; occasionally push/pull with her right lower extremity; frequently balance, stoop, and crouch; occasionally climb, kneel, and crawl; and be exposed to hazardous equipment that required right foot controls only on an occasional basis. (Tr. 233-234, 236).

On August 14, 2003, at the request of Plaintiff's attorney, Dr. Maria Garrido, a licensed clinical psychologist, performed an evaluation of Plaintiff. (Tr. 242-248). Upon exam, Plaintiff was fully cooperative, alert, and oriented, and she had a sad and worried affect; moderate impairments in memory, concentration, and abstraction; a very low level of functioning on visual-motor tasks that involved problem solving with novel stimuli within time limits; deficient cognitive functioning; and difficulty comprehending task demands. (Tr. 243-246). Dr. Garrido diagnosed Plaintiff with Dysthymia, Post Traumatic Stress Disorder (PTSD), borderline-deficient cognitive functioning, and a Global Assessment of Functioning (GAF) score of 55, and she opined that Plaintiff would not be able to function adequately in competitive employment. (Tr. 246).

-13-

Dr. Garrido also opined that Plaintiff had a moderate impairment in her ability to relate to other people; a moderate restriction in her ability to perform her daily activities; a moderate constriction of interests; a moderate impairment in her ability to understand, carry out, and remember instructions; a moderate impairment in her ability to respond appropriately to supervision; a moderate impairment in her ability to respond to co-workers; a moderately severe impairment in her ability to respond to customary work pressures; a mild impairment in her ability to perform simple tasks; a moderately severe impairment in her ability to perform complex tasks; a moderate impairment in her ability to perform repetitive tasks; and a moderately severe impairment in her ability to perform varied tasks. (Tr. 247-248).

On September 19, 2003, Plaintiff was seen at the Providence Community Health Center for a review of her blood pressure and cholesterol. (Tr. 253). Plaintiff reported that she felt okay, and, upon exam, she had no heart palpitations. (Tr. 253). Plaintiff was diagnosed with high blood pressure and cholesterol, which were noted as well controlled. (Tr. 254).

On January 12, 2004, Plaintiff was seen at the Providence Community Health Center for an annual GYN exam. (Tr. 257-261). Upon exam, she was oriented, and she had a normal heart, no deformities, and a normal mood and affect. (Tr. 258). It was also noted that she had no depression or psychiatric illness, was living with her adult son, had no job but babysits, and feels safe. (Tr. 257).

On March 2, 2004, Plaintiff was seen at the Providence Community Health Center for a review of her blood pressure and cholesterol. (Tr. 263). Plaintiff reported that she felt okay. (Tr. 263). Upon exam, Plaintiff had no heart palpitations (Tr. 263), and she was diagnosed with high blood pressure. (Tr. 264).

-14-

On May 18, 2004, Plaintiff was seen at the Providence Community Health Center for a review of her blood pressure and cholesterol. (Tr. 266). Plaintiff reported that she felt okay and had no complaints. (Tr. 266). Upon exam, Plaintiff had no heart palpitations, dizziness, or headaches, and her high blood pressure was noted as well controlled. (Tr. 266-267).

On August 11, 2004, Plaintiff was seen at the Providence Community Health Center for complaints of dizziness and lower back pain. (Tr. 269-270). Upon exam, Plaintiff had normal range of motion, stability, and muscle tone; a normal gait; and a negative straight leg raising test. (Tr. 270). Plaintiff was diagnosed with high blood pressure, which was stable; lower back pain; high cholesterol; and depression and anxiety related to worries about her son in Santo Domingo, which were expected to improve in one to two weeks. (Tr. 270).

On August 17, 2004, at the request of Plaintiff's attorney, Dr. John P. Parsons, a licensed clinical psychologist, performed a psychological assessment of Plaintiff. (Tr. 271-280). Upon exam, Plaintiff was moderately distressed, tearful, alert, and oriented, and she had normal speech; a tearful and depressed mood; an appropriate affect; an apprehensive manner; anxiety; obsessive thoughts; no disturbances in consciousness; impaired attention and concentration spans; deficits in her immediate and recent memory; an intact remote memory; and a fund of information that was consistent with her cognitive abilities. (Tr. 275-276). Dr. Parsons diagnosed Plaintiff with PTSD, major depressive disorder, mild mental retardation, and a GAF score of 49, and he opined that maintaining employment would be a "very difficult task" for Plaintiff. (Tr. 276-277).

Dr. Parsons also opined that Plaintiff had a moderately severe impairment in her ability to relate to other people; a severely restricted ability to perform her daily activities; a moderately severe constriction of interests; a moderately severe impairment in her ability to understand, carry out, and

-15-

remember instructions; a moderately severe impairment in her ability to respond appropriately to supervision; a moderately severe impairment in her ability to respond to coworkers; a severe impairment in her ability to respond to customary work pressures; a moderately severe impairment in her ability to perform simple tasks; and a severe impairment in her ability to perform complex, repetitive, and varied tasks. (Tr. 279-280).

Plaintiff testified that she could no longer work because she suffered from fatigue, a racing heart, pain in her left shoulder and back, swelling in her hands and legs, feelings of sadness and desperation, and forgetfulness. (Tr. 37, 43-46). She stated that she had nightmares, drowsiness, and numbness in her legs. (Tr. 44).

Plaintiff testified that she was currently working as a child care provider on a daily basis from 4:00 p.m. until 1:00 a.m., but that her daughter had to help care for the children for part of the time because she would get very dizzy. (Tr. 38-41, 46). However, Plaintiff indicated that she was solely responsible for the welfare of the children (ages 10 and 6) for several hours until their mother picked them up during the night. (Tr. 36, 41). She stated that she could prepare her own meals when she was not dizzy, bathe, get out of bed, and perform household chores. (Tr. 41-42). Plaintiff testified that she watched television, and that she went to church on Sundays. (Tr. 43, 46). She stated that she had no problem getting along with other people. (Tr. 43).

Robert McGinn, the VE, testified that Plaintiff's past jobs as an eyeglass polisher and child care provider were sedentary and unskilled and medium and semi-skilled, respectively. (Tr. 47-48). The ALJ asked the VE to assume a person with Plaintiff's age, education, and work experience, who could perform medium work that did not require repetitive overhead reaching and lifting on the left side, stooping, crawling, or crouching; a moderate limitation in concentration limiting them to no

-16-

more than simple, repetitive tasks; or exposure to extreme temperatures. (Tr. 48). The VE testified that such a person could perform Plaintiff's past work as a polisher, as well as other jobs as a bus person, kitchen helper, laundry worker, light maintenance worker, and housekeeper (10,000 positions, in the aggregate, in Rhode Island, Massachusetts and Connecticut). (Tr. 48-50).

The ALJ found that Plaintiff had severe impairments consisting of depression, left shoulder pain from bursitis or tendonitis, low back and right knee pain with a slightly decreased range of motion, and borderline intellectual functioning. (Tr. 20, 24 at Finding 2). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform medium work that did not require repetitive stooping, crawling, or crouching; repetitive use of right foot controls; repetitive lifting or reaching above left shoulder level; performing more than simple, repetitive tasks; and exposure to dangerous equipment or temperature extremes. (Tr. 23, 24 at Finding 5). The ALJ found that Plaintiff's RFC allowed her to perform her past relevant work as a polisher, as well as other jobs as a bus person, kitchen helper, laundry worker, light maintenance worker, and housekeeper. (Tr. 24, 24-25 at Findings 6-8). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. 24, 25 at Finding 8).

## B.     The ALJ's RFC Assessment is Supported by Substantial Evidence

Plaintiff's appeal focuses on the ALJ's assessment of her claimed mental impairments. In particular, Plaintiff argues that this matter "must be remanded for the explanations of the weight given to Dr. Parsons and Dr. Garrido in connection with their specific findings, specifying the medical evidence relied upon in making that determination." Pl's Mem. at p. 10, citing 20 C.F.R. § 404.1527.

In her decision, the ALJ found that Plaintiff "never sought psychiatric treatment" and only once on August 11, 2004 (see Tr. 270) "did any treating source note any psychiatric issues, which were assessed as mild and expected to improve." (Tr. 23). This finding is not disputed by Plaintiff and is fully supported by the record. Plaintiff's attorney referred her to two psychologists for assessment. The first, conducted by Dr. Garrido, took place on August 14, 2003 which was shortly after the denial of Plaintiff's request for consideration (Tr. 60) and her engagement of counsel. (Tr. 68). Presumably because Dr. Garrido's assessment of mostly moderate impairments was not sufficient by itself to support Plaintiff's claim, Plaintiff was referred by her attorney for a second assessment which took place on August 17, 2004 shortly before the ALJ hearing. (Tr. 271-280). Dr. Parsons conducted the second assessment which found Plaintiff's mental limitations to be mostly moderately severe and severe. (Tr. 279-280).

Plaintiff contends that the total lack of evidence regarding her mental capacity from either a state agency physician or consultative medical expert designated by the Commissioner is "particularly significant" and that Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996), precludes the ALJ from herself interpreting the mental health information contained in the reports of Drs. Garrido and Parsons. In other words, Plaintiff argues that the absence of state agency evaluations denied the ALJ any arguable basis for her RFC finding.

Plaintiff's reliance on 20 C.F.R. § 404.1527(f)(2)(ii) is misplaced. Although that section of the regulations gives the ALJ guidance in considering the opinions of state agency consultants and experts, it does not mandate that such nonexamining opinion evidence be included in the record. Similarly, Plaintiff's reliance on Manso-Pizarro is misplaced, as the ALJ's decision is not based on her lay interpretation of "raw data in a medical record." 76 F.3d at 17. Rather, it is based upon her

review of all of the medical evidence of record and the conclusions reached by both examining and nonexamining medical sources.

An ALJ must give controlling weight to the opinion of a claimant's treating physician when the opinion (1) concerns the nature and severity of an impairment; (2) is well supported by medically acceptable clinical and laboratory diagnostic techniques; and (3) is not inconsistent with the other substantial evidence in the case record. See 20 C.F.R. § 416.927(d)(2).

Here, the ALJ thoroughly discussed Dr. Garrido's and Dr. Parsons' opinions (Tr. 21-22, 23), but she did not give those opinions controlling weight. (Tr. 23). Specifically, for a medical source's opinion to be given controlling weight, that medical source must be a "treating source." See Social Security Ruling ("SSR") 96-2p. However, a medical source will not be considered to be a treating source when the claimant's relationship with that source is based solely on the claimant's need to obtain a report to support her claim for disability. See 20 C.F.R. § 416.902.

Here, as indicated by the ALJ (Tr. 23), Plaintiff's relationships with Dr. Garrido and Dr. Parsons were based solely on referrals by Plaintiff's attorney and used to obtain a report to support her claim for SSI. Indeed, both Dr. Garrido and Dr. Parsons stated that they were evaluating Plaintiff at the request of her attorney to support her SSI application, and that they were not undertaking a treating relationship with her. (Tr. 242, 271). Thus, since Dr. Garrido and Dr. Parsons were not treating sources, the ALJ was not required to give their opinions controlling weight.

The ALJ also determined that the opinions from Dr. Garrido and Dr. Parsons were not entitled to controlling weight because Plaintiff never sought any psychiatric treatment. (Tr. 23).[2]

---

[2] Another Judge of this Court has recently criticized the practice of sending clients for psychiatric evaluation even though no physician has requested such a referral and the prior medical records do not support a claim of disability based on a mental impairment. See Nield v. Barnhart, C.A. 03-494LO, Memorandum and Order at p. 11 (D.R.I. March 29, 2005).

Courts have found a lack of treatment to be relevant to the weight afforded to opinion evidence. See e.g., Hatton v. Comm'r. of Soc. Sec. Admin., 131 Fed. Appx. 877, 879 (3rd Cir. 2005); Ford v. Apfel, 221 F.3d 1342 (8th Cir. 2000). Indeed, there is no evidence that Plaintiff pursued any psychiatric treatment even after Dr. Garrido's and Dr. Parsons' assessments. Further, Plaintiff never alleged that she suffered from a mental impairment in her initial, reconsideration, or hearing applications (Tr. 106, 129, 135), which is inconsistent with the claim that her alleged mental impairments were disabling. See Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir. 1993).

Additionally, the ALJ also determined that the opinions from Dr. Garrido and Dr. Parsons were not entitled to controlling weight because only one of her treating sources ever found that she had psychiatric issues, and those issues were found to be mild and expected to improve in only one to two weeks. (Tr. 23, 270). Indeed, the other evidence of record establishes that Plaintiff did not have the severe mental limitations as opined to by Dr. Parsons.

Specifically, Plaintiff was found to be alert and oriented with a normal mood and affect at Rhode Island Hospital (Tr. 155); Dr. Vitelli found that she was alert and oriented with no history of depression (Tr. 159); the Providence Community Health Center found that she was oriented with a normal mood and affect (Tr. 258); and Dr. Thomas Bennett found that she had a normal mood, affect, memory, and personality. (Tr. 183, 190, 194, 197, 205, 210). Further, Plaintiff herself stated that she was currently paid by the State to work as a child care provider on a daily basis (Tr. 38), and that she was able to bathe, get out of bed, perform household chores, prepare her own meals, watch television, go to church on Sundays, get along with other people, care for her personal needs, shop, pay her bills, read, and visit with her friends and relatives. (Tr. 41-42, 43, 46, 123, 124, 125, 128, 176, 244, 274).

Moreover, the ALJ determined that the opinions from Dr. Garrido and Dr. Parsons were not entitled to controlling weight because those opinions were not consistent with each other, as Dr. Parsons found that Plaintiff had a GAF of 49 and moderately severe to severe limitations, and Dr. Garrido found that she had a GAF of 55 and only mostly mild to moderate limitations. Accordingly, the ALJ properly found that the opinions from Dr. Garrido and Dr. Parsons were not entitled to controlling weight.

Finally, Plaintiff calls attention to the ALJ's finding that she retained the mental RFC to perform simple, repetitive tasks due to a limitation in concentration. (Tr. 23, 24 at Finding 5). Specifically, Plaintiff alleges that, assuming the ALJ properly rejected Dr. Garrido's and Dr. Parsons' opinions regarding the limitations that resulted from her mental impairments, the record was otherwise insufficient to assess her mental RFC, since there were no other assessments of her mental functional capacity from any medical sources. Pl.'s Mem. at 6-8, 10. Consequently, Plaintiff claims the ALJ improperly interpreted the evidence of record herself when finding that Plaintiff retained the mental RFC to perform simple, repetitive tasks. Thus, Plaintiff argues that substantial evidence cannot possibly support the ALJ's mental RFC assessment.

When the medical evidence shows relatively little in regards to a mental impairment, the ALJ may make a "common sense" judgment about a claimant's RFC, even when the record does not contain a psychologist's assessment regarding the claimant's functional capacity. See Manso-Pizarro, 76 F.3d at 17. The ALJ's judgment about an RFC should be based on all the relevant evidence that is in the record, including, inter alia, the medical signs and laboratory findings; lay evidence; reports of daily activities; frequency of treatment; and symptoms resulting from the alleged impairments. See SSR 96-8p; 20 C.F.R. § 416.945(a)(3) (when deciding claimant's RFC, ALJ

-21-

considers not only medical evidence, but descriptions and observations provided by claimant and others such as family, neighbors, and friends).  Moreover, "[c]areful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone."  SSR 96-8p.

Here, as conceded by Plaintiff, absent the opinions rendered by Dr. Garrido and Dr. Parsons, which were not given controlling weight by the ALJ, there was no other evidence in the record that Plaintiff had any mental limitations, including any that restricted her ability to perform simple, repetitive tasks.  Thus, the ALJ could appropriately find that Plaintiff could perform simple, repetitive tasks, which was consistent with a finding that she could perform unskilled work.  See SSR 85-15 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities...to understand, carry out and remember simple instructions...."); 20 C.F.R. § 416.968(a).  Thus, substantial evidence supports the ALJ's finding that Plaintiff retained the RFC to perform simple, repetitive tasks.

Moreover, in accordance with SSR 96-8p and 20 C.F.R. § 416.945(a)(3), the ALJ's mental RFC assessment is supported by the medical signs, laboratory findings, and lay evidence, as well as Plaintiff's reports of daily activities, frequency of treatment, and symptoms resulting from her alleged mental impairments.

Specifically, Plaintiff was found to be alert and oriented with a normal mood and affect at Rhode Island Hospital (Tr. 155); Dr. Vitelli found that she was alert and oriented with no history of depression (Tr. 159); the Providence Community Health Center found that she was oriented with a normal mood and affect (Tr. 258); and Dr. Thomas Bennett found that she had a normal mood, affect, memory, and personality.  (Tr. 183, 190, 194, 197, 205, 210).  Further, Plaintiff stated that

-22-

she was currently working as a child care provider (Tr. 38), and that she was able to bathe; get out of bed; perform household chores; prepare her own meals; watch television; go to church on Sundays; get along with other people; care for her personal needs; shop; pay her bills; read; and visit with her friends and relatives. (Tr. 41-42, 43, 46, 123, 124, 125, 128, 176, 244, 274). Finally, as noted by the ALJ, Plaintiff never sought, or was referred to, psychiatric treatment. (Tr. 23). Thus, substantial evidence supports the ALJ's finding that Plaintiff retained the RFC to perform simple, repetitive tasks.

Finally, the ALJ's conclusion is further supported by the fact that she did not completely reject the opinions of Dr. Garrido and Dr. Parsons. The ALJ found that Plaintiff has depression and borderline intellectual functioning that was "severe" but not of listing level severity. The ALJ ultimately assessed a moderate limitation in concentration limiting Plaintiff to "simple repetitive tasks." This finding is supported by substantial evidence, including the fact that Plaintiff was being paid by the State to provide child care services at the time of the ALJ hearing and was left alone for several hours daily to care for two relatively young children.

**C.      The ALJ's Failure to Explicitly Follow the Regulatory Analysis for Evaluating Mental Impairments Amounts to Harmless Error when Viewed Against the Entirety of the Record.**

Plaintiff further contends that this case should be remanded because the ALJ failed to comply with the "special technique" required under 20 C.F.R. § 416.920a in assessing the severity of Plaintiff's mental impairments.

As Plaintiff correctly notes, in valuating a claimant's alleged mental impairments, the ALJ is required to follow a "special technique" outlined in 20 C.F.R. § 416.920a. Pursuant to the technique, the ALJ must determine whether or not Plaintiff's impairments are "severe" by rating the functional limitation which results from the impairment(s) in four specific areas: "[a]ctivities of daily

-23-

living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 416.920a(c)(3). While this Court is troubled by the ALJ's failure to follow a mandatory regulatory review procedure, several courts in this Circuit have found that the failure to explicitly follow the prescribed technique is "harmless error" if the record otherwise supports the ALJ's conclusion and a remand would not "change, alter or impact the result." See, e.g., Arruda v. Barnhart, 314 F. Supp. 2d 52, 79-81 (D. Mass. 2004). See also Querido v. Barnhart, 344 F. Supp. 2d 236, 250-254 (D. Mass. 2004). Because of efficiency concerns, this Court sees no benefit in a meaningless remand and agrees with and adopts the standard articulated above, which inquires whether remand would change, alter or impact the result.

While it is true, as Plaintiff argues, that the ALJ did not specifically list a rating for each of the four specified functional areas, she explicitly listed some of the daily activities in which Plaintiff was involved, including cooking, cleaning, shopping, going to church, etc. (Tr. 23). The ALJ also related that Plaintiff can perform as a paid child care provider and is able to socialize with family and friends. (Tr. 23). While these findings were made with respect to Plaintiff's RFC, they still provide the required ratings for Plaintiff's daily activities, social functioning, and concentration, persistence, or pace. See Querido, 344 F. Supp. 2d at 251-251; Arruda, 314 F. Supp. 2d at 79 (stating, "[a]lthough discussed in connection with [the claimant's] residual functional capacity, the findings provide the necessary ratings for the functional areas...."). Finally, the record contains evidence that Plaintiff's low IQ results from her lack of formal education and has not been shown to be limiting as to activities of daily living. (Tr. 23). In fact, Dr. Garrido indicated that Plaintiff's literacy skills in Spanish were at an "advanced level" when compared to other similar individuals with minimal formal education. (Tr. 244).

Finally, the fact that the ALJ made no rating with respect to episodes of decompensation, is not surprising, given the complete lack of any evidence of any hospitalization or treatment for mental health issues in the record. (Tr. 23). Her reasoning is supported by substantial evidence of record. Given this lack of evidence, the ALJ's failure to explicitly discuss this functional area was harmless. See Querido, 344 F. Supp. 2d at 253-254.

## VI.   CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion to Affirm (Document No. 8) be GRANTED and that Plaintiff's Motion for Summary Judgment (Document No. 7) be DENIED.   I further recommend that Final Judgment be entered in favor of the Commissioner.  Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. Fed. R. Civ. P. 72(b); Local Rule 32.  Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1990).


LINCOLN D. ALMOND
United States Magistrate Judge
December 16, 2005